T.C. Summary Opinion 2009-67

UNITED STATES TAX COURT

SARAH MARQUEZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12917-05S.                    Filed May 7, 2009.

Sarah Marquez, pro se.

<u>Stephen R. Doroghazi</u>, for respondent.

DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f) for 2000.[1]

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits received into evidence are incorporated herein by reference. When the petition was filed, petitioner resided in Florida.

Petitioner married Neil Peiman (Mr. Peiman) in February 1999; the marriage produced one child. During their marriage they operated or held interests in several entities: (1) 4G Trading, Inc. (4G Trading), a day trading company, which was operated by Mr. Peiman and another associate; (2) Star Millennium Group, Inc. (Star Millennium), a real estate holding company, of which petitioner and Mr. Peiman served as officers and directors; (3) NLS Enterprises, Inc. (NLS), a holding company for investments, of which petitioner and Mr. Peiman served as officers; and (4) "IAG", a regional Internet service provider, owned by Mr. Peiman. Petitioner was also actively involved in

---

[1]Petitioner's former husband, Neil Peiman, was notified that petitioner was seeking relief from joint and several liability and that he had a right to intervene in the matter. He has not exercised his right to intervene.

the accounting functions of IAG, NLS, and Star Millennium, but she was not actively involved in the accounting functions of 4G Trading.

In June 1999 Mr. Peiman sold IAG for cash and stock of "One Main". Petitioner was not an owner of, officer of, or otherwise involved with One Main before or after the takeover of IAG. The sale proceeds Mr. Peiman received "went into an account by the name of BT Alex Brown." Petitioner did not have access to nor was she a signatory on the BT Alex Brown account. She did not know how much money Mr. Peiman held in the BT Alex Brown account. Whenever petitioner told Mr. Peiman that she needed money, he would "just write a check out of the BT Alex Brown account" and deposit it into their joint account. She used the joint account to pay their household expenses.

In May 2001 petitioner and Mr. Peiman separated. They filed a joint Form 1040, U.S. Individual Income Tax Return, for 2000 in September 2001 pursuant to extensions. A certified public accountant (C.P.A.) prepared the Form 1040. They reported petitioner's wages of $11,000, interest income of $5,464, ordinary dividends of $1,379, a loss of $13,403 from their three S corporations (4G Trading, NLS, and Star Millennium),[2] and a capital gain of $537,593. The capital gain consisted of various

---

[2]Petitioner provided the source information for the S corporations' returns to their C.P.A.

gains and losses from sales of stock, including Mr. Peiman's liquidation of the One Main stock he received from the IAG takeover as "the restrictions came off", and $73,870 in cash proceeds from the takeover of IAG that Mr. Peiman received in 2000 and reported as income under the installment method. The Form 1040 reported a $101,739 tax liability and total payments of $27,683[3] for a $79,368 balance due.

Sometime in 2001 Mr. Peiman moved to Costa Rica. When petitioner traveled to meet Mr. Peiman in Costa Rica, he greeted her with divorce papers "the minute [she] stepped off the plane." Although petitioner and Mr. Peiman divorced in March 2003, they filed a joint return for 2002, which was prepared by their C.P.A. The C.P.A. also prepared a Form 1040X, Amended U.S. Individual Income Tax Return, for 2000 that petitioner picked up from the C.P.A. The 2000 Form 1040X made certain revisions to petitioner and Mr. Peiman's adjusted gross income, itemized deductions, taxable income, and their tax liability on account of a net operating loss carryback for 2002. In addition, the 2000 Form 1040X reported a tax liability of $98,146 and total payments $84,187[4] for a $13,959 balance due.

---

[3]The payments consist of withholdings of $2,683 and an amount "paid with request for extension to file" of $25,000.

[4]The payments consist of withholdings of $2,683, an amount "paid with request for extension to file" of $25,000, and an amount of "tax paid with original return plus additional tax paid
(continued...)

In December 2003 the Internal Revenue Service (IRS) sent petitioner and Mr. Peiman notices of intent to levy, but the notices were returned as refused or unclaimed.[5]  In March 2004 petitioner requested relief from joint and several liability under section 6015(f) by filing a Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), and a Form 12510, Questionnaire for Requesting Spouse (discussed infra).  In September 2004 she filed a Form 12509, Statement of Disagreement.[6]  In her Form 12509 she asserts that she did not have income in 2000 and the 2000 tax liability derived from the sale of Mr. Peiman's business.  She also claims that she did not have access to IRS notices.  And according to petitioner, she receives no financial support from Mr. Peiman and is completely penniless and without assets.

The IRS issued a final notice to petitioner in April 2005.  The IRS denied petitioner's request for relief from joint and several liability.  The IRS determined that she had knowledge of the liability and did not establish a belief that the tax would be paid within a reasonable time.  According to the IRS,

_____

[4](...continued)
after it was filed" of $56,504.

[5]The IRS also sent petitioner and Mr. Peiman notices of intent to levy in February 2004, but the notices were returned as refused or unclaimed.

[6]The IRS's preliminary determination was not submitted to the Court as part of the record.

petitioner failed to submit her divorce decree or indicate how her bills were being paid.

Thereafter, petitioner filed a timely petition with the Court. In her petition she asserts that she had no income for 2000 and did not have access to financial information since she and Mr. Peiman were separated. She also claims that she had no knowledge of whether the tax would be paid. According to petitioner, she receives no financial support from Mr. Peiman and "imposing this debt on [her] would cause [her] great economic hardship." As of October 30, 2006, petitioner and Mr. Peiman's account balance was $19,087.38.

## Discussion

### I. Joint and Several Liability and Section 6015(f) Relief

Section 6013(d)(3) provides that if a joint return is filed, the tax is computed on the taxpayers' aggregate income, and liability for the resulting tax is joint and several. See also sec. 1.6013-4(b), Income Tax Regs. But the IRS may relieve a taxpayer from joint and several liability under section 6015(f) if, taking into account all the facts and circumstances, it is inequitable to hold the taxpayer liable for any unpaid tax or deficiency and the taxpayer does not qualify for relief under section 6015(b) or (c). Except as otherwise provided in section 6015, the taxpayer bears the burden of proof. See Rule 142(a);

Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

The Commissioner has issued revenue procedures to guide IRS employees in determining whether a requesting spouse is entitled to relief from joint and several liability.  See Rev. Proc. 2003-61, 2003-2 C.B. 296, modifying and superseding Rev. Proc. 2000-15, 2000-1 C.B. 447.  Rev. Proc. 2003-61, supra, lists the factors that IRS employees should consider, and the Court also uses the factors when reviewing the IRS's denial of relief.  See Washington v. Commissioner, 120 T.C. 137, 147-152 (2003).

## II.  Rev. Proc. 2003-61, Sec. 4.01:  Seven Threshold Conditions for Relief

Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297, begins with a list of seven threshold conditions that a taxpayer must satisfy in order to qualify for equitable relief.  The Court will not recite them.  Respondent concedes that petitioner satisfies the threshold requirements.

## III.  Rev. Proc. 2003-61, Sec. 4.02:  Circumstances Ordinarily Allowing for Relief

Where the requesting spouse satisfies the threshold conditions of Rev. Proc. 2003-61, sec. 4.01, then Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298, sets forth the circumstances in which the IRS will ordinarily grant relief under section 6015(f) for an underpayment of a properly reported liability.  To qualify for relief under Rev. Proc. 2003-61, sec.

4.02, the requesting spouse must: (1) No longer be married to, be legally separated from, or have not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when the return was signed that the nonrequesting spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.

Petitioner was divorced from Mr. Peiman when she requested relief. The first requirement is satisfied.

In the case of a reported but unpaid liability, the relevant knowledge is whether the taxpayer knew or had reason to know when the return was signed that the tax would not be paid. Washington v. Commissioner, supra at 151; Feldman v. Commissioner, T.C. Memo. 2003-201, affd. 152 Fed. Appx. 622 (9th Cir. 2005). The general rule for unpaid liabilities is that the requesting spouse must establish that: (1) When the requesting spouse signed the return, the requesting spouse had no knowledge or reason to know that the tax reported on the return would not be paid; and (2) it was reasonable for the requesting spouse to believe that the nonrequesting spouse would pay the tax shown due. Morello v. Commissioner, T.C. Memo. 2004-181; Ogonoski v. Commissioner, T.C. Memo. 2004-52; Collier v. Commissioner, T.C. Memo. 2002-144.

In petitioner's Form 12510, she asserts that she was not involved in the preparation of the Forms 1040 and 1040X because a C.P.A. prepared them and she did not review the Forms 1040 and 1040X because they were too complicated.  She also claims that she did not assist Mr. Peiman with his business, and she had only minor business experience.  She also claims that she knew a balance was due and just assumed the tax would be paid.  And she did not know how much money Mr. Peiman had in his BT Alex Brown account or what funds were available to pay the tax.  She also did not know what efforts she or Mr. Peiman made to pay the tax after the returns were filed.  She adds that she knew that they were having financial problems at the time the return was filed due to a "child custody fight" with Mr. Peiman's ex-spouse.  According to petitioner, she had full access to a joint account from which she wrote checks to pay their household expenses.  But she did not review the monthly bank statements, balance the checkbook, or open their household mail.  Finally, she claims that Mr. Peiman held a separate account with respect to the takeover of IAG to which she did not have access and from which he transferred funds into their joint account.

At trial petitioner testified that she did not review the Form 1040, and she was not able to look at the "taxes and * * * figure out what all of [it] was."  She also testified that she went with Mr. Peiman to the post office to mail the Form 1040.

But she just assumed that Mr. Peiman had enclosed a payment for their tax liability because he said he did.

Generally, it is permissible to consider the complexity of the nonrequesting spouse's financial or business affairs in determining whether the requesting spouse knew or had reason to know of the underpayment. Compare Sanders v. United States, 509 F.2d 162, 169-170 (5th Cir. 1975) (complexity is a "permissible consideration"), with McCoy v. Commissioner, 57 T.C. 732, 734 (1972) (lack of knowledge predicated on mere ignorance of the tax consequences is not a defense where the facts are within the requesting spouse's possession or reasonably within reach), and Beatty v. Commissioner, T.C. Memo. 2007-167 (taxpayer would not have understood the reported information that was attributable to her husband and his business of which she had no knowledge).

Although petitioner only has a high school education, she was the president and registered agent of NLS and an officer and director of Star Millennium during 2000. In addition, Mr. Peiman "delegated most of that stuff", e.g., bookkeeping, accounting, and bank reconciliation of these entities, to petitioner. Their C.P.A. would ask petitioner for information about cash account balances, bank reconciliation, check coding, reconciliation of accounts receivable balances, and etc., while he prepared the various income tax returns and schedules of NLS and Star

Millennium.  She was also employed by IAG and was actively involved in its accounting functions.

The record therefore supports an inference that petitioner was quite sophisticated with respect to the issues pertaining to her and Mr. Peiman's various tax matters.  The Court therefore does not give much weight to petitioner's claims that she did not review their Forms 1040 and 1040X because they were too complex and that she did not have much business experience.  The Court finds that the complexity of petitioner and Mr. Peiman's Forms 1040 and 1040X and her purported lack of business experience do not excuse petitioner's failure to exercise her duty of inquiry.

Petitioner was also actively involved in the household's finances:  she had full access to a joint account from which she wrote checks to pay their household expenses.  And she "monitored the account to know what was in there and when money was needed", notwithstanding her claims that she did not review their monthly bank statements, balance their checkbook, or open their household mail.

Arguably, Mr. Peiman might have been evasive or deceitful because he told petitioner that he had enclosed a payment for their 2000 tax liability with their Form 1040 but did not and he held money in the BT Alex Brown account, the amount of which petitioner had no knowledge.  Compare <u>Jonson v. Commissioner</u>, 118 T.C. 106, 119-120 (2002) (relief unavailable where requesting

spouse did not establish that the requesting spouse concealed or deceived her concerning their financial affairs and she had access to financial files), affd. 353 F.3d 1181 (10th Cir. 2003), with Albin v. Commissioner, T.C. Memo. 2004-230 (and cases cited therein).  But Mr. Peiman was not otherwise evasive or deceitful about their business or personal affairs or about the fact that their Forms 1040 and 1040X showed a balance due.  Indeed, petitioner was quite aware of these issues, yet she would have the Court believe that she placed blind faith in and deferred to Mr. Peiman to pay the 2000 tax liability without any inquiry into its payment.

Inquiry by petitioner was essential in view of her admissions that she:  (1) Knew their Forms 1040 and 1040X showed a balance due; (2) did not know how much money was in the BT Alex Brown account; (3) did not know what money was available to pay their 2000 tax liability; and (4) knew they were having financial difficulties on account of Mr. Peiman's child custody issues. See, e.g., Stolkin v. Commissioner, T.C. Memo. 2008-211 (the Court has consistently found that a requesting spouse's knowledge of their financial difficulties deprives the requesting spouse of reason to believe that the nonrequesting spouse will pay the tax liability).

Moreover, the record supports an inference that petitioner might have been aware that Mr. Peiman had a habit or practice of

skirting some of his financial responsibilities.  Indeed, at trial she asked their C.P.A. whether he was aware that:  (1) Mr. Peiman had tax issues in the past; (2) Mr. Peiman had a payment plan "in the 90's with the [IRS]"; (3) NLS was created to shield assets from Mr. Peiman's ex-spouse; and (4) Mr. Peiman moved to Costa Rica to hide or shield assets from Mr. Peiman's ex-spouse. Apparently, red flags were flying, but petitioner failed to heed the warnings and abdicated her duty of inquiry.

Upon the basis of the foregoing, the Court finds that petitioner has not proven that she did not know or have reason to know when she signed their Forms 1040 and 1040X that the balance shown as due would not be paid.  Petitioner is not entitled to relief under Rev. Proc. 2003-61, sec. 4.02, and the Court need not discuss the third requirement.

IV.  <u>Rev. Proc. 2003-61, Sec. 4.03:  Other Factors</u>

Where the requesting spouse fails to qualify for relief under Rev. Proc. 2003-61, sec. 4.02, the IRS may nevertheless grant relief under Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298.  The Court's analysis with respect to the nonexhaustive list of factors contained in Rev. Proc. 2003-61, sec. 4.03 is described below.

A.  Marital Status

The IRS will take into consideration whether the requesting spouse is divorced or separated from the nonrequesting spouse. Rev. Proc. 2003-61, sec. 4.03(2)(a)(i), 2003-2 C.B. at 298.

Petitioner was divorced from Mr. Peiman when she filed her request.  This factor weighs in favor of relief.  See McKnight v. Commissioner, T.C. Memo. 2006-155 (divorce weighs in favor of relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, T.C. Memo. 2007-136 (same under Rev. Proc. 2000-15).

B.  Economic Hardship

The IRS will take into consideration whether the requesting spouse will suffer economic hardship if relief is not granted. Rev. Proc. 2003-61, sec. 4.03(2)(a)(ii), 2003-2 C.B. at 298. Generally, economic hardship exists if collection of the tax liability will cause the taxpayer to be unable to pay reasonable basic living expenses.  Butner v. Commissioner, supra.  In determining a reasonable amount for basic living expenses, the Court considers, among other things:  (1) The taxpayer's age, employment status and history, ability to earn, and number of dependents; (2) an amount reasonably necessary for food, clothing, housing, medical expenses, transportation, current tax payments, and expenses necessary to the taxpayer's production of income; (3) the cost of living in the taxpayer's geographic area; (4) the amount of property available to satisfy the taxpayer's

expenses; (5) any extraordinary circumstances; e.g., special education expenses, a medical catastrophe, or a natural disaster; and (6) any other factor bearing on economic hardship. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs.

The IRS has issued guidelines for allowable expenses.[7] "Necessary expenses are those that meet the necessary expense test; i.e., 'they must provide for a taxpayer's and his or her family's health and welfare and/or the production of income' and they must be reasonable." Schulman v. Commissioner, T.C. Memo. 2002-129 n.6. There are three types of necessary expenses: (1) Those based on national standards; e.g., food, housekeeping supplies, clothing, and personal care products and services; (2) those based on local standards; e.g., housing, utilities, and transportation; and (3) other expenses, which are not based on national or local standards. Id.

Except as otherwise noted, petitioner has not substantiated her basic living expenses; e.g., by providing receipts or statements. Accordingly, the Court will use the following amounts in its analysis of petitioner's claim of economic hardship:

---

[7]The guidelines are published on the IRS's Web site at http://www.irs.gov/individuals/article/0,,id=96543,00.html (last visited May 1, 2009). The amount listed as the national or local standard is effective as of Mar. 1, 2009.

| Expenditure | Amount Allowed |
|---|---|
| Housing & utilities | [1]$1,581 |
| Auto | [2]561 |
| Food | [3]537 |
| Housekeeping supplies | [3]66 |
| Apparel & services | [3]162 |
| Personal care products & services | [3]55 |
| Miscellaneous | [3]165 |
| Total | 3,127 |

[1]Based on the local standard for a two-person family.

[2]Petitioner's actual payment of $360 per month plus the local operating standard of $201 per month for a single taxpayer with one car.  Although petitioner's credit report shows that she has another automobile lease payment of $332 per month, she has not proven that the second automobile is a necessary expense.

[3]Based on the national standard for a two-person family.

Petitioner claims (unsubstantiated) wages of $1,277.76 per month on her Form 12510.  Thus, it appears that imposing the tax liability on petitioner would cause her an economic hardship since her allowable monthly expenses exceed her wages by $1,849.24.  Additionally, her credit report shows that she is indebted to the extent of $250,543.  But she has not substantiated her wages or proven the value of her assets that could be used to satisfy her liability, such as the equity in her condo that she "left" to her stepdaughter, the value of her interests in her corporations, if any, or the value of any claims she might have against Mr. Peiman for alimony or child support. Further she supports only one child, is in her midthirties, and is gainfully employed as a branch manager at a bank, making

$54,000 per year. The Court therefore finds that petitioner has not proven that she will suffer economic hardship if relief is not granted.[8] See Monsour v. Commissioner, T.C. Memo. 2004-190 (requesting spouse must prove that the expenses qualify and that they are reasonable). This factor weighs against granting relief. See Banderas v. Commissioner, T.C. Memo. 2007-129 (lack of economic hardship weighs against relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (same under Rev. Proc. 2000-15).

C. Knowledge or Reason To Know

The IRS will consider whether the requesting spouse did not know or had no reason to know that the nonrequesting spouse would not pay the liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii)(A), 2003-2 C.B. at 298.

Petitioner has failed to establish that she did not know or have reason to know when the Forms 1040 and 1040X were filed that the tax liability would not be paid. See supra pp. 10-13. This factor weighs against granting relief. See Beatty v. Commissioner, T.C. Memo. 2007-167 (knowledge or reason to know weighs against relief under Rev. Proc. 2003-61); cf. Levy v. Commissioner, T.C. Memo. 2005-92 (same under Rev. Proc. 2000-15).

---

[8]The Court also notes that petitioner took her child to China for a vacation in 2008 despite her claim that imposing the tax liability on her would cause her to suffer economic hardship.

D. Nonrequesting Spouse's Legal Obligation

The IRS will consider whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement. Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.

There is no evidence in the record of a divorce decree or agreement showing that the unpaid tax liability was the legal obligation of Mr. Peiman. Therefore, this factor is neutral. See Magee v. Commissioner, T.C. Memo. 2005-263 (applying Rev. Proc. 2003-61); cf. Butner v. Commissioner, T.C. Memo. 2007-136 (applying Rev. Proc. 2000-15).

E. Significant Benefit

The IRS will consider whether the requesting spouse received any significant benefit beyond normal support as a result of the unpaid tax liability. Rev. Proc. 2003-61, sec. 4.03(2)(a)(v), 2003-2 C.B. at 299.

There is nothing indicating that petitioner received any significant benefit from her and Mr. Peiman's unpaid tax liability. Therefore, this factor weighs in favor of relief. See Magee v. Commissioner, supra (lack of significant benefit weighs in favor of relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (lack of significant benefit weighed in favor of relief under former section 6013(e) notwithstanding that Rev. Proc. 2000-15 states that it is neutral).

- 19 -

F.  Compliance With Federal Tax Laws

The IRS will take into consideration whether the requesting spouse has made a good faith effort to comply with the Federal income tax laws in succeeding years.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi), 2003-2 C.B. at 299.

Respondent agrees that petitioner has complied with the Federal income tax laws.  This factor weighs in favor of relief. See Fox v. Commissioner, T.C. Memo. 2006-22 (noncompliance weighs against relief under Rev. Proc. 2003-61); cf. Butner v. Commissioner, supra (same under Rev. Proc. 2000-15).

G.  Abuse

The IRS will consider whether the nonrequesting spouse abused the requesting spouse.  Rev. Proc. 2003-61, sec. 4.03(2)(b)(i), 2003-2 C.B. at 299.  The presence of abuse is a factor favoring relief, and a history of abuse may mitigate the requesting spouse's knowledge or reason to know.  Id.

In both Forms 8857 and 12510 petitioner claimed that she was not abused by Mr. Peiman.  But in petitioner's pretrial memorandum she claimed that she was abused by Mr. Peiman in that: (1) When Mr. Peiman saw that he was going to lose her, he trapped her; (2) she could not leave because she would be alienated from her finances and knowledge of their assets; and (3) when she "still wanted to leave" Mr. Peiman tricked her into traveling to Costa Rica for the purpose of divorcing her and leaving her with

nothing.  At trial she testified that she was not physically abused, but "there was abuse in the marriage to the extent that she could not leave" because she would be alienated from their finances and knowledge of their assets.

The Court is skeptical that petitioner's purported abuse falls within the definition of or rises to the level of abuse contemplated by the Federal income tax laws.  See <u>Nihiser v. Commissioner</u>, T.C. Memo. 2008-135, for an extensive discussion of the abuse factor.  The Court, however, need not decide the issue because the Court accords little weight to petitioner's subsequent inconsistent statements about her purported abuse. See <u>Sundel v. Commissioner</u>, T.C. Memo. 1998-78 (and cases cited therein), affd. without published opinion 201 F.3d 428 (1st Cir. 1999); <u>McGirl v. Commissioner</u>, T.C. Memo. 1996-313, affd. without published opinion 131 F.3d 143 (8th Cir. 1997).  Therefore, this factor is neutral.  See <u>Magee v. Commissioner</u>, <u>supra</u> (lack of abuse is a neutral factor under Rev. Proc. 2003-61); cf. <u>Butner v. Commissioner</u>, <u>supra</u> (same under Rev. Proc. 2000-15).

H.  <u>Mental or Physical Health</u>

The IRS will take into consideration whether the requesting spouse was in poor mental or physical health on the date she signed the return or at the time relief was requested.  Rev. Proc. 2003-61, sec. 4.03(2)(b)(ii), 2003-2 C.B. at 299.

There is no evidence in the record that petitioner's mental or physical health was poor; therefore, this factor is neutral. See id.; see also Magee v. Commissioner, supra.

Conclusion:  Weight of the Factors

Three factors weigh in favor of relief, two factors weigh against relief, and three factors are neutral.  Although the decision is close, the Court concludes that the Appeals officer did not err in concluding that petitioner is not entitled to relief from joint and several liability under section 6015(f). See Porter v. Commissioner, 132 T.C. __ (2009).  Respondent's determination is therefore sustained.

To reflect the foregoing,

Decision will be entered

for respondent.