T.C. Memo. 2008-211

UNITED STATES TAX COURT

KATHY LORRAINE STOLKIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5203-06.                 Filed September 4, 2008.

Kathy Lorraine Stolkin, pro se.

Steven M. Roth, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, Judge:  This case arises from a request for relief
from joint and several liability under section 6015(f) for the
year 1993.[1]  Respondent denied petitioner's request for relief,
and petitioner timely filed a petition.  The issue for decision

_____

[1] All section references are to the Internal Revenue Code,
unless otherwise indicated.

is whether petitioner is entitled to relief from joint and several liability under section 6015(f).  We hold that she is not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner resided in California at the time she filed the petition.

Petitioner married Mr. Stolkin in 1981.  They had one son in 1982 and a second son in 1985.  The Stolkins enjoyed a relatively lavish lifestyle, with live-in maids as well as pool and grounds help.  Mr. Stolkin earned over $100,000 a year as a pilot for Federal Express, formerly known as the Flying Tigers, and had separate trust fund and oil income.

The Stolkins' only bank account was a joint checking account into which Mr. Stolkin would transfer funds.  Petitioner paid all the household expenses from the joint checking account.  In addition, she would pay all the invoices for any items Mr. Stolkin had purchased.  Petitioner admitted that Mr. Stolkin was a compulsive spender and a shopaholic.  She worried about his spending because she knew that they did not have the income to cover all their expenses and his purchases.  Mr. Stolkin purchased guns, a gun safe, a customized motor home, and, at one

point, purchased a new truck every few months. He made no efforts to conceal his excessive purchases from petitioner.

The Stolkins experienced financial difficulties because their expenses generally exceeded their income. The couple sold their $2.2 million Beverly Hills home in 1990 and relocated to a $900,000 home in Ojai, California, to reduce costs. They used $500,000 of the proceeds from the Beverly Hills sale as a down payment (and thus had $500,000 of equity) in the Ojai house. The house was titled in the names of both petitioner and Mr. Stolkin. The Stolkins continued to experience financial difficulties after their move to Ojai. Mr. Stolkin's spending habits exacerbated the Stolkins' financial problems and strained their marriage.

The couple received a $220,000 distribution from Mr. Stolkin's individual retirement account (IRA) in 1993, and petitioner was aware of this. She discussed the distribution with Mr. Stolkin before they received the money, and she used the money to pay the expenses that were necessary to maintain the comfortable lifestyle to which the Stolkins had grown accustomed. The Stolkins' marriage seemed to be plagued with financial problems, however, and eventually they filed for bankruptcy in June 1994.[2]

---

[2] Mr. Stolkin continued to fail to make mortgage payments and the Stolkins' Ojai home was foreclosed after 1994.

The Stolkins filed a joint Federal income tax return for 1993 on October 16, 1994, approximately 4 months after filing bankruptcy.[3] The return for 1993 showed an $81,559 tax underpayment that was attributable, in part, to the $220,000 IRA distribution. Petitioner knew that there was an underpayment for which she was liable, but petitioner did not assist with preparation of the return, nor did she discuss the return with Mr. Stolkin.

The Stolkins divorced in June 1995. The California divorce court ordered Mr. Stolkin to pay petitioner $4,500 in monthly spousal support and a separate amount for child support. Petitioner was earning $1,000 per month in wages at that time. In addition, petitioner received half of her husband's Federal Express pension and will be entitled to between $900 and $1000 per month from the pension when she reaches the age of 59½ in 2009. Mr. Stolkin also agreed to hold petitioner harmless from the Federal income tax liability for 1993 as part of the divorce settlement.

Petitioner filed a request for section 6015 relief of $55,473 in 2004, claiming that a denial of relief would be inequitable and would impose undue hardship on her. Petitioner asserted that most of the tax liability was attributable to her

_____

[3] The Stolkins were granted two extensions for filing the return for 1993.

ex-husband's separate property and that at the time the return was filed, petitioner reasonably believed her ex-husband would pay the tax. Petitioner further asserted that it would be inequitable to hold her liable for the underpayment when her ex-husband earned far more than petitioner's $60,000 salary and when petitioner had mortgage payments to make while her ex-husband lived in property owned by his mother. At the time she filed the request for relief, petitioner owned a town house valued at $500,000 with $80,000 in equity and leased a BMW at $600 per month. Petitioner was also attending law school. Respondent denied petitioner's request for relief, and petitioner filed a stand-alone petition to this Court.

Petitioner failed to timely file a return for 1997. Petitioner's ex-husband has not filed a tax return for the past 12 years.

OPINION

We are asked to decide whether respondent erred in denying petitioner relief from an unpaid tax liability that was reported some 4 short months after the Stolkins filed for bankruptcy. Petitioner argues that, although she was aware there was an underpayment, she reasonably believed that Mr. Stolkin would pay the underpayment as the taxes had always been paid in the past. Petitioner further argues that it is inequitable to hold her

liable when the underpayment was attributable to her ex-husband and her ex-husband had the means to pay it.

Only section 6015(f) applies as this case involves an underpayment of taxes shown on a joint return for 1993.[4] The Commissioner has the discretion to relieve the spouse or former spouse of joint liability if, taking into account all the facts and circumstances, it is inequitable to hold that spouse liable for any deficiency or unpaid tax. Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.

We begin with whether we have jurisdiction. This Court has jurisdiction to determine whether section 6015(f) relief is warranted after a request for relief has been denied by the Commissioner. See sec. 6015(e)(1). The Court may consider evidence outside the administrative record when determining whether relief should be granted. Porter v. Commissioner, 130 T.C. __ (2008).

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f). See Rev. Proc. 2003-61, 2003-2 C.B. 296. The

---

[4] Married taxpayers who elect to file a joint return are jointly and severally liable for the entire tax due. See sec. 6013(d)(3). A spouse or former spouse may petition the Commissioner for relief from joint and several liability in certain circumstances. See sec. 6015(a). In cases involving an underpayment of tax, as here, sec. 6015(b) and (c) does not apply but equitable relief may be available under subsec. (f). Sec. 1.6015-4, Income Tax Regs.; Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.

requesting spouse must meet seven threshold conditions before the Commissioner will consider a request for relief. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297. The parties agree that petitioner has met the preliminary requirements for relief.

I. Safe Harbor for Section 6015(f) Relief

We now turn to whether petitioner satisfies the three conditions of a safe harbor under section 6015(f) that the Commissioner has established. See Gonce v. Commissioner, T.C. Memo. 2007-328; Billings v. Commissioner, T.C. Memo. 2007-234; Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298. Equitable relief will ordinarily be granted if the requesting spouse fulfills all three conditions of the safe harbor. The parties agree that petitioner satisfies the condition that she is no longer married to Mr. Stolkin. Id. sec. 4.02(1)(a). In dispute is whether (a) petitioner at the time of signing the return had no knowledge or reason to know that Mr. Stolkin would not pay the tax liability, and (b) petitioner would suffer economic hardship if relief is not granted. See id. sec. 4.02(1)(b) and (c). We address these two conditions in turn to determine whether petitioner comes within the safe harbor.

A. Petitioner Had Knowledge or Reason To Know That Mr. Stolkin Would Not Pay the Liability

Respondent argues that it was not reasonable for petitioner to think that Mr. Stolkin would pay the tax only 4 months after

filing for bankruptcy. We agree. Petitioner had reason to believe at the time she signed the return that her ex-husband would not pay the joint income tax liability. Moreover, we have consistently found that a requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that his or her ex-spouse will pay the tax liability. Gonce v. Commissioner, supra; Butner v. Commissioner, T.C. Memo. 2007-136.

The Stolkins' financial difficulties throughout their 14-year marriage should have put petitioner on notice that Mr. Stolkin would not pay the tax liability. Mr. Stolkin did not hide his shopaholic tendencies from petitioner. Moreover, petitioner was aware that the couple's expenses exceeded their income because she paid the household expenses and all the bills, including bills for Mr. Stolkin's "toys." We agree with respondent that petitioner's testimony that she believed her ex-husband would pay the tax liability is disingenuous given petitioner's knowledge of the Stolkins' financial difficulties and her ex-husband's financial irresponsibility.

We also reject petitioner's argument that it was reasonable for her to assume that Mr. Stolkin would pay the tax liability with the $500,000 of equity they had in the Ojai house. First, the relevant date for determining the requesting spouse's knowledge is the time at which he or she signs the tax return.

See Rev. Proc. 2003-61, sec. 4.02(1)(b). Second, any refinancing would have to have involved petitioner because her name was on the title to the Ojai property. Petitioner did not provide any evidence that she assisted her ex-husband with obtaining a home equity loan. Moreover, Mr. Stolkin's history of spending beyond the couple's means belies petitioner's alleged belief. We therefore find that petitioner had reason to know at the time she signed the return that her ex-husband would not pay the joint tax liability.

B. Petitioner Will Not Suffer Economic Hardship If Relief Is Denied

We now address whether petitioner will suffer economic hardship if relief is denied. We find that she will not. A denial of section 6015(f) relief imposes economic hardship if it prevents the requesting spouse from being able to pay his or her reasonable basic living expenses. Butner v. Commissioner, supra; Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Reasonable basic living expenses are based on the taxpayer's circumstances but do not include amounts needed to maintain a luxurious standard of living. Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Relevant circumstances include the taxpayer's age, ability to earn an income, number of dependents and status as a dependent. Sec. 301.6343-1(b)(4)(ii)(A), Proced. & Admin. Regs. The amount of property available to satisfy the taxpayer's

expenses is also a relevant factor.  Butner v. Commissioner,
supra; sec. 301.6343-1(b)(4)(ii)(D), Proced. & Admin. Regs.

Petitioner was receiving $4,500 in monthly spousal support
and $1,000 per month in salary at the time she filed the request
for relief in the amount of $55,473.  Petitioner had assets
available to satisfy the tax liability, including a $500,000
townhouse with $80,000 of equity and an interest in her ex-
husband's pension.  Petitioner's monthly expenses included $600
monthly lease payments on a BMW.  Furthermore, respondent
determined that, based on petitioner's spousal support and
salary, petitioner had monthly disposable income of $600 which
could have been applied to the tax liability.

Petitioner argues that she would suffer economic hardship if
she were held liable for the joint tax liability but her husband
would not.  Petitioner argues that her ex-husband, unlike her,
has no monthly housing expense because he lives in a place owned
by his mother.  In addition, he earns much more than petitioner.
We find these factors irrelevant.  This Court was not asked to
decide who should bear the burden of the tax liability.  Instead,
our focus is on whether petitioner is entitled to relief from the
liability.  We find that petitioner had the means to make monthly
payments to reduce the tax liability and that denying her relief
will not impose economic hardship on her.

II. <u>Balancing Test for Determining Whether Section 6015(f)</u>
    <u>Equitable Relief Would Be Appropriate</u>

When a requesting spouse fails to satisfy the safe harbor conditions, the Commissioner may determine through a balancing test whether equitable relief is appropriate. The Commissioner has listed relevant positive, neutral, and negative factors to be weighed by the Commissioner in determining relief. See Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. The factors include whether the requesting spouse (1) had knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability; (2) would suffer economic hardship if relief were denied; (3) complied with income tax laws in years after the year at issue; (4) received significant economic benefit from the items giving rise to the liability; (5) was abused by the nonrequesting spouse; and (6) was in poor health when signing the return or requesting relief; and (7) whether the nonrequesting spouse had a legal obligation to pay the outstanding liability. <u>Id.</u> sec 4.03(2). The list is nonexhaustive and no single factor is determinative. <u>Id.</u> We address each of the factors in turn.

A. <u>Knowledge That Petitioner's Ex-Spouse Would Not Pay the</u>
   <u>Liability</u>

We have already explained our finding that petitioner did not have reason to believe that her ex-husband would pay the tax liability. This factor weighs against relief.

B. <u>Economic Hardship</u>

We have already explained our finding that a denial of relief would not impose economic hardship on petitioner. This factor weighs against relief.

C. <u>Compliance With Tax Laws After 1993</u>

Petitioner admits that she failed to timely file a return for 1997. This factor weighs against relief. Petitioner urges us to consider her compliance with tax laws in comparison with her ex-husband's failure to comply with tax laws for the past 12 years. We find petitioner's ex-husband's lack of compliance to be irrelevant. It does not shift the balance in favor of relief.

D. <u>Economic Benefit From Items Giving Rise to Liability</u>

A significant benefit for purposes of section 6015(f) is any benefit in excess of normal support. Sec. 1.6015-2(d), Income Tax Regs. Respondent concedes that there is no evidence that petitioner benefited significantly from the unpaid tax liability. We agree with respondent and find this factor weighs in favor of relief.

E. <u>Abuse by Nonrequesting Spouse</u>

Petitioner argues that her ex-husband's financial irresponsibility constituted a form of emotional abuse against petitioner. We have indicated, however, that nonphysical abuse will weigh in favor of relief only where it is severe enough to incapacitate a requesting spouse in the same manner he or she

would be incapacitated by physical abuse.  Nihiser v.
Commissioner, T.C. Memo. 2008-135.  There is no evidence that
petitioner's ex-husband's spending incapacitated petitioner to
that extent or that his spending was greater in 1993 than when
their marriage began.  We find this factor to be neutral.

F. Poor Health

Petitioner did not allege that she was in poor health when
she signed the petition.  Respondent determined that this factor
is neutral, and we have no information to find otherwise.

G. Nonrequesting Spouse's Legal Obligation To Pay Liability

Petitioner argues that she should be relieved of liability
for the tax underpayment because the divorce agreement
specifically required her ex-spouse to pay the underpayment for
1993.  Respondent does not question the validity of the
California court order.  A legal obligation to pay is not a
persuasive factor in favor of relief, however, if the requesting
spouse had reason to believe upon entering the agreement that it
would not be upheld by the nonrequesting spouse.  Rev. Proc.
2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.  Petitioner was
aware of her ex-husband's tendency to spend beyond his means.  We
find that petitioner had reason to believe, at the time the
divorce agreement was issued in 2001, that her ex-husband would
not pay the underpayment.  Thus, petitioner's ex-husband's legal
obligation under the divorce agreement does not weigh in favor of

relief. We agree with respondent that Mr. Stolkin's legal obligation to pay the tax liability is a neutral factor.

H. Additional Factors Cited by Petitioner

Petitioner cites two additional factors that we do not find to be persuasive. First, petitioner argues that it is inequitable to deny her relief because the underpayment is attributable in part to the separate property of her ex-husband. Petitioner was aware of the underpayment and agreed to joint and several liability with Mr. Stolkin when she signed the return, however, and she could have filed a married filing separate return. Petitioner argues further that the IRA distribution was the separate property of Mr. Stolkin. We agree with respondent that the IRA distribution became community property once it was commingled in the Stolkins' joint checking account. See Gee v. Commissioner, 127 T.C. 1, 4-5 (2006). We find these additional factors to be neutral.

III. Conclusion

After taking into account all the facts and circumstances presented, we find that petitioner is not entitled to equitable relief under section 6015(f).

To reflect the foregoing,

Decision will be entered for

respondent.