T.C. Summary Opinion 2010-22


UNITED STATES TAX COURT


KATHERINE WITHERSPOON KANNARD, Petitioner AND
JAMES R. KANNARD, JR., Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5633-07S.                    Filed March 1, 2010.


Katherine Witherspoon Kannard, pro se.

James R. Kannard, Jr., pro se.

John R. Bampfield, for respondent.


CARLUZZO, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code of 1986, as amended, in effect for the relevant period.

other court, and this opinion shall not be cited as precedent for any other case.

In this section 6015(e) proceeding, petitioner seeks to be relieved from a 2004 Federal income tax liability assessed against her because she filed a joint Federal income tax return for that year. Consistent with respondent's determination denying her administrative request for relief, petitioner's former spouse, James R. Kannard, Jr. (intervenor), opposes relief.

## Background

Some of the facts have been stipulated and are so found. At the time the petition was filed, petitioner and intervenor resided at separate addresses in Florida.

Petitioner and intervenor were married in July 1988; they separated during 2005 and were divorced in October 2007. They have a daughter and twin sons, all minors and all subjects of a hostile custody dispute during the divorce proceedings. A social worker involved in the custody dispute described the relationship between petitioner and intervenor as a "whirlwind of animosity", riddled with he-said, she-said accusations of spousal abuse, child abuse, deception, larceny, and adultery. From their respective presentations at trial it is clear that the whirlwind

has lost none of its force.[2] Petitioner's unpaid Federal income tax liability and the resultant dispute with the Internal Revenue Service over that liability no doubt exaggerated the resentment each feels towards the other. The trial testimony of each was informed not so much by any good-faith attempt to objectively describe relevant events, but by the animosity witnessed and described by the social worker. Consequently, rather than accept one version over the other, we reject as incredible their conflicting descriptions of the same events. That being so, our conclusions are supported by factual findings based almost exclusively upon stipulations, undisputed testimony, or written records.

Petitioner graduated with a bachelor of arts degree in international political science from Emory University in 1988. Starting in 2001 and at all times relevant, she was employed as a consultant by Uniphy Management Systems (Uniphy), a company that provides medical insurance services to physicians.

In 1998, after interrupting his college education to serve in the U.S. Navy, intervenor graduated with a bachelor of science degree in electrical engineering from the University of

---

[2]Hostilities carried over from disputed domestic relations matters between former or estranged spouses surface all too frequently in sec. 6015(e) proceedings. See, e.g., Stergios v. Commissioner, T.C. Memo. 2009-15.

Tennessee.  Soon after graduation he accepted a position with Honeywell International, Inc. (Honeywell), in Tampa, Florida.

Petitioner's and intervenor's salaries from their respective employers were deposited into one or the other of two joint checking accounts, one of which was maintained at the GTE Federal Credit Union (the GTE joint account).  These joint checking accounts, in addition to a number of credit card accounts, were used to pay the couple's living expenses.

Intervenor's employment with Honeywell ended in February 2004.  Soon thereafter he withdrew approximately $11,000 from his employer-based retirement plan (the pension distribution).  He also applied for and received unemployment compensation before starting a new job in March 2004.  The pension distribution and unemployment compensation were deposited into the GTE joint account.

For each year that they were married, including 2004 and the year of their divorce, petitioner and intervenor elected to file a joint Federal income tax return.  The 2004 joint Federal income tax return was prepared and electronically filed using a computer-based income tax return preparation program (the 2004 joint return).

The income reported on the 2004 joint return does not include the above-referenced pension distribution or unemployment compensation (the omitted items).  The tax shown on the 2004

joint return does not include the applicable section 72(t) additional tax attributable to the pension distribution.

Email communications between petitioner and intervenor during the relevant period demonstrate that petitioner was aware of the omitted items.

Respondent determined a deficiency in petitioner and intervenor's 2004 Federal income tax and issued a notice of deficiency to them on December 11, 2006. The deficiency determined in that notice of deficiency takes into account the omitted items and the section 72(t) additional tax attributable to the pension distribution. Neither petitioner nor intervenor petitioned this Court in response to that notice of deficiency, and the deficiency and related amounts were assessed in due course.

## Discussion

In general, spouses may elect to file a joint Federal income tax return for a year even if one spouse had no obligation to file a return for that year. Sec. 6013(a). Spouses electing to do so are jointly and severally liable not only for the entire amount of tax reported on the return, but also for any deficiency subsequently determined as well, even if all income giving rise to the tax liability is allocable to only one of them. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000); see sec. 1.6013-4(b), Income Tax Regs.

Subject to various conditions and in a variety of ways, an individual who has made a joint return may elect to seek relief from the joint and several liability arising from that joint return.  Sec. 6015.

There are three types of relief available under section 6015.  In general, subsection (b) provides full or apportioned relief from joint and several liability, subsection (c) provides proportionate tax relief to divorced or separated taxpayers, and subsection (f) provides equitable relief from joint and several liability if relief is not available under subsection (b) or (c).

Petitioner requests relief under all of the above-referenced subsections of section 6015.  Because she was aware of the omitted items, however, she is not entitled to relief under subsection (b) or (c).  See sec. 6015(b)(1)(C), (c)(3)(C); Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; Charlton v. Commissioner, 114 T.C. 333, 341 (2000); Bokum v. Commissioner, 94 T.C. 126, 148 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).  That being so, we consider, de novo, her entitlement to equitable relief under subsection (f). Porter v. Commissioner, 132 T.C. __ (2009).

A taxpayer is entitled to section 6015(f) relief if, taking into account all the facts and circumstances, it would be inequitable to hold the taxpayer liable for any unpaid tax or deficiency.  Sec. 6015(f)(1).  Taking into account the factors

the Commissioner considers in matters such as this, see Rev. Proc. 2003-61, 2003-2 C.B. 296, we find that it would not be inequitable to hold petitioner liable for joint and several income tax liability that arises from the joint 2004 Federal income tax return filed with intervenor, and therefore petitioner is not entitled to relief from that liability under section 6015(f).

Little would be gained by burdening this opinion with a discussion of each of the factors contained in the above-referenced revenue procedure.  See sec. 7463(a) (last sentence). Suffice it to note that petitioner's actual knowledge of the omitted items, although not determinative, weighs heavily against relief, see Stolkin v. Commissioner, T.C. Memo. 2008-211; Rev. Proc. 2003-61, sec. 4.03(2)(a)(iii), 2003-2 C.B. at 298, as does her failure to establish that:  (1) She did not significantly benefit from the omitted income; or (2) she would suffer economic hardship if she were required to pay the 2004 income tax liability.

To reflect the foregoing,

Decision will be entered

for respondent.