T.C. Memo. 2010-255

UNITED STATES TAX COURT

EILEEN L. PUGSLEY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7841-09.          Filed November 18, 2010.

<u>Mario J. Fazio</u>, for petitioner.

<u>Katherine Lee Kosar</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  This case arises from a request for relief from joint and several liability under section 6015(f)[1] for the years 1999, 2000, 2001, 2002, 2003 and 2005 (years at issue). Respondent denied petitioner's request for relief, and petitioner

---

[1]All section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

timely filed a stand-alone petition.[2]  The issue for decision is whether petitioner is entitled to relief from joint and several liability under section 6015(f).  We hold that she is not.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated by this reference.  Petitioner resided in Glen Ellyn, Illinois at the time she filed the petition.

Petitioner married Daniel Pugsley (Dr. Pugsley) in 1978. The Pugsleys divorced in February 2010 after 32 years of marriage.  Petitioner seeks innocent spouse relief from tax liabilities arising from Dr. Pugsley's sole proprietorship during the years at issue.

Dr. Pugsley owned and operated a dental practice from 1980 through the years at issue.  Petitioner graduated from college with an English degree in 1976 and worked for nine years before leaving the workforce to raise the Pugsleys' four children. Petitioner later earned a dual graduate degree in education and psychology from Kent State University in 2004.  Petitioner thereafter worked as a school psychologist at high schools in Ohio and Illinois.

The Pugsleys managed their finances out of two bank accounts while they were married.  Dr. Pugsley paid some of the family's

---

[2]This Court has jurisdiction to determine whether sec. 6015(f) relief is warranted after a request for relief has been denied by the Commissioner.  See sec. 6015(e)(1).

larger expenses, such as the home mortgage and car payments, from his dental practice's bank account. The Pugsleys paid general household expenses from a personal joint bank account (joint account). Petitioner deposited all of her earnings into the joint account, and Dr. Pugsley periodically deposited funds into the joint account.

The Pugsleys appeared to live a very comfortable life. They sold their first home in 2001 for $392,500 and therefter took out a $480,000 mortgage to purchase a new home for $540,000. They spent $300 a month to belong to a tony athletic club. Three of their four children attended expensive private colleges. The colleges their children attended included Middlebury College, Dennison University and Rhode Island School of Design.

The Pugsleys experienced financial difficulties in the early 1990s. They failed to pay Federal and State taxes, resulting in tax liens being placed on their home. Petitioner claims that she did not know about the liens until the Pugsleys decided to sell their house in 2001, even though the liens were filed against both her and Dr. Pugsley. The Pugsleys used the proceeds from the sale of their first home to pay off their debts and have the liens removed.

In addition, Dr. Pugsley began suffering from depression and alcoholism following the death of his mother in 1997. Dr. Pugsley typically drank at least one bottle of red wine every day during the

years at issue. Dr. Pugsley's alcoholism caused his productivity at his dental practice to suffer. Petitioner found creditor notices in the mail and questioned Dr. Pugsley about their finances. He assured her that their finances were in order, and she failed to question him further. Though petitioner claims to have had no knowledge of their financial problems, she did know that they were receiving great financial support from his and her parents through gifts and inheritances. Dr. Pugsley's father gave the Pugsleys more than $100,000 to help pay household obligations. Petitioner received $100,000 in inheritances from her parents' estates that she used to pay a portion of their children's college tuition.

In 1999 Dr. Pugsley hired Tim Mikolay (Mr. Mikolay), a certified public accountant (CPA), to prepare the Pugsleys' joint tax returns. Every year Dr. Pugsley received the return prepared by Mr. Mikolay and then stuffed the return in his desk drawer at his dental office. Neither Dr. Pugsley nor petitioner signed or filed the returns or made any payment for the 1999 to 2002 tax years.[3] Petitioner did not inquire about the Pugsleys' tax

---

[3]The Pugsleys' joint tax return for 2001 was dated as signed on Apr. 2, 2001. Petitioner testified at trial that the stated date on the return was an error and that the Pugsleys probably executed the return with the other unfiled returns in 2008 as discussed below.

returns during this period. Mr. Mikolay learned that Dr. Pugsley had not been filing the joint tax returns. He stopped preparing the Pugsleys' joint tax returns in 2003.

Dr. Pugsley told petitioner that he had hired a new CPA to prepare their joint tax return for 2003 when in fact the return for 2003 had not been prepared or filed. Dr. Pugsley admitted his fabrication to petitioner in 2004 after she unsuccessfully tried to contact the fictitious CPA. The Pugsleys then hired Neil Johnson (Mr. Johnson), a CPA, in 2005. Mr. Johnson prepared the Pugsleys' joint tax returns for 2003 and 2004 in August 2005. The following year, the Pugsleys filed a joint tax return for 2005 but failed to pay the balance shown as due. The Pugsleys timely filed a joint return for 2006 and paid in full the tax due.

Dr. Pugsley's dental license expired in 2005 after he failed to complete his continuing education requirements. He continued to practice dentistry until the Ohio State Dental Board shut down his practice in March 2007.[4] Dr. Pugsley continued to get dressed every morning in his usual medical scrubs and told petitioner that he was going to the office though he was really going to a parking lot to consume alcohol. Petitioner received calls from many of Dr. Pugsley's patients asking why he was not showing up

---

[4]Dr. Pugsley's dental license was reinstated in September 2007.

for appointments. When petitioner told him about the calls, he claimed he had already returned the patients' calls and rescheduled their appointments. She failed to pursue this issue.

Dr. Pugsley's depression and alcoholism reached a low in June 2007 when he threatened suicide. He was immediately admitted to a rehabilitation facility for treatment. While Dr. Pugsley was in the rehabilitation facility, petitioner found the unexecuted and unfiled returns for the 1999 through 2003 tax years (unfiled returns) in Dr. Pugsley's desk drawer as well as notices that their home mortgage was in foreclosure. Petitioner and Dr. Pugsley remained together following his release from the rehabilitation facility. Dr. Pugsley filed for bankruptcy in June 2007 to be relieved of their financial mistakes, rather than sell their house. Dr. Pugsley voluntarily dismissed the bankruptcy in October 2007.

Petitioner thereafter contacted Mr. Johnson. Mr. Johnson advised her to execute the unfiled returns and send them to the Internal Revenue Service (IRS). Before filing the returns, petitioner filed a claim for section 6015 relief in October 2007. The IRS denied her claim because the IRS had not received the unfiled returns. The Pugsleys did not execute the unfiled returns until January 2008. The couple lived together until the mortgage on their marital residence was foreclosed in May 2008.

In August 2008 petitioner moved to Illinois to work as a high school psychologist. She earns over $58,000 per year with minimal expenses. She provides financial assistance for her youngest child, who is still in college. Around September 2008 petitioner and Dr. Pugsley executed a separation agreement. Dr. Pugsley agreed to provide petitioner with $1,500 monthly spousal support for ten years beginning in September 2008. Dr. Pugsley also agreed to pay petitioner $484.17 a month for ten years representing her half of the marital assets and $240 a month in health insurance payments for her children. Dr. Pugsley accepted liability for the outstanding taxes in the separation agreement. Dr. Pugsley subsequently agreed to pay the IRS $1,000 a month to settle the joint liabilities.

Petitioner filed new claims for section 6015 relief in March and April 2008 that covered the years at issue. She subsequently submitted a Form 433-A, Collection Information Statement, together with related banking documentation. Respondent denied petitioner's requests based on the information she had provided.

Petitioner appealed the determination, and respondent's Appeals Office again disallowed her claim for relief. The Appeals Office determined, among other things, that petitioner would not suffer economic hardship if obligated to pay the tax liabilities, petitioner knew or had reason to know that the tax liability reported on each return would not be paid, and

petitioner was not legally separated from Dr. Pugsley.  The Appeals Office noted that there was no abuse to consider in its determination, petitioner did not suffer from any physical or mental health issues, and petitioner was compliant with the tax laws as of the time of determination.  Moreover, the Appeals Office determined that petitioner would have $461 available monthly to make payments.

Petitioner filed an individual return for 2009 as an unmarried head of household with two exemptions.  On the advice of Mike Mahoney, a CPA, petitioner did not report any of the spousal support payments she received from Dr. Pugsley as income.  Petitioner also erroneously stated that she contributed $5,000 to an individual retirement account (IRA) on her return for 2009.

OPINION

We must decide whether respondent erred in denying petitioner relief from unpaid tax liabilities for the years at issue.  Petitioner argues that she believed her ex-husband would pay their tax liabilities and that it is inequitable to hold her liable when the underpayments were attributable to her ex-husband.

Only section 6015(f) applies as this case involves underpayments of taxes shown on joint returns.[5]  The Commissioner

---

[5] Married taxpayers who elect to file a joint return are jointly and severally liable for the entire tax due.  See sec. 6013(d)(3).  A spouse or former spouse may petition the
(continued...)

has the discretion to relieve a spouse or former spouse of joint liability if, taking into account all the facts and circumstances, it is inequitable to hold that spouse liable for any deficiency or unpaid tax.  Sec. 6015(f); sec. 1.6015-4(a), Income Tax Regs.

We begin with the standard of review and the burden of proof. Respondent urges us to review the case for abuse of discretion. To do so, however, would be to reject our previous holding that the standard of review is de novo.  Porter v. Commissioner, 132 T.C. 203 (2009).  A trial de novo requires independent judicial determination of the issues in the case.  See, e.g., Morris v. Rumsfeld, 420 F.3d 287, 292, 294 (3d Cir. 2005); Timmons v. White, 314 F.3d 1229, 1233-1234 (10th Cir. 2003).  The spouse requesting relief generally bears the burden of proof.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), affd. 101 Fed. Appx. 34 (6th Cir. 2004).

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f).  See Rev. Proc. 2003-61, 2003-2 C.B. 296.  The requesting spouse must meet seven threshold conditions before the Commissioner will consider a request for relief.  Id. sec. 4.01,

---

[5](...continued)
Commissioner for relief from joint and several liability in certain circumstances.  See sec. 6015(a).  In cases involving an underpayment of tax, as here, sec. 6015(b) and (c) does not apply but equitable relief may be available under subsec. (f).  Sec. 1.6015-4, Income Tax Regs.; Rev. Proc. 2003-61, sec. 2.04, 2003-2 C.B. 296, 297.

2003-2 C.B. at 297.  The parties agree that petitioner has met the preliminary requirements for relief.

I. <u>Safe Harbor for Section 6015(f) Relief</u>

We now turn to whether petitioner satisfies the three conditions of a safe harbor under section 6015(f) that the Commissioner has established.  See <u>Gonce v. Commissioner</u>, T.C. Memo. 2007-328; <u>Billings v. Commissioner</u>, T.C. Memo. 2007-234; Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298.  Equitable relief will ordinarily be granted if the requesting spouse fulfills all three conditions of the safe harbor.  The first condition is that the requesting spouse was no longer married to, or legally separated from, her former spouse at the time she filed the request for innocent spouse relief.  Petitioner filed three separate innocent spouse relief requests.  The request at issue was filed in April 2008.  At the time, the Pugsleys were still married.  They did not enter into a separation agreement until September 2009 and were not divorced until February 2010. Petitioner does not satisfy this condition.  Accordingly, petitioner does not qualify under the safe harbor, and we need not consider the other two conditions.

II. <u>Balancing Test for Determining Whether Section 6015(f)</u>
    <u>Equitable Relief Would Be Appropriate</u>

When a requesting spouse fails to satisfy the safe harbor conditions, the Commissioner may determine through a balancing test whether equitable relief is appropriate.  The Commissioner

has listed relevant factors to be weighed by the Commissioner in determining relief. See Rev. Proc. 2003-61, sec. 4.03, 2003-2 C.B. at 298. The factors include whether the requesting spouse (1) is separated or divorced from the nonrequesting spouse, (2) had knowledge or reason to know that the nonrequesting spouse would not pay the income tax liability, (3) would suffer economic hardship if relief were denied, (4) complied with income tax laws in years after the year at issue, (5) received significant economic benefit from the unpaid income tax liability, (6) was abused by the nonrequesting spouse, and (7) was in poor health when signing the return or requesting relief, and (8) whether the nonrequesting spouse had a legal obligation to pay the outstanding liability. Id. sec. 4.03(2). The list is nonexhaustive, and no single factor is determinative. Id. We address each of the factors in turn.

A. Marital Status

We first consider petitioner's marital status. This factor weighs in favor of the requesting spouse if he or she is separated or divorced from the nonrequesting spouse. Id. sec. 4.03(2)(i). Petitioner's marital status changed from the time relief was requested to the time of trial. We must therefore look at petitioner's marital status at the time of trial in applying the balancing test under de novo review. See Wilson v. Commissioner, T.C. Memo. 2010-134. Petitioner and Dr. Pugsley divorced in February 2010 before trial of this case in June.

B. <u>Knowledge or Reason To Know That Nonrequesting Spouse Would Not Pay Liability</u>

The second factor is whether the requesting spouse knew or had reason to know that the nonrequesting spouse would not pay the tax liability.  Petitioner requests relief from liability for unpaid taxes reported on the returns for 1999, 2000, 2001, 2002 and 2003 signed and filed in 2008 and the return for 2005 signed and filed in 2006 (returns at issue).

Respondent argues that it was unreasonable for petitioner to think that Dr. Pugsley would pay the tax liabilities when she signed the returns at issue.  We agree.  Petitioner knew that Dr. Pugsley had a history of failing to pay their joint tax liabilities.  Petitioner found many unfiled returns showing unpaid liabilities stuffed inside Dr. Pugsley's desk drawer and also was aware that Federal and State tax liens had been placed on their previous residence because of unpaid taxes.  Moreover, petitioner knew that her family had serious financial troubles.  Dr. Pugsley filed for bankruptcy in 2007, and the Pugsleys had to rely on over $200,000 in family gifts and inheritances to pay for their household necessities and children's college tuition.  Petitioner testified that she knew the family finances were utterly devastated and that bills were not being paid.  She nevertheless signed the returns.

We have consistently found that a requesting spouse's knowledge of the couple's financial difficulties deprives the

requesting spouse of reason to believe that his or her ex-spouse will pay the tax liability.  Stolkin v. Commissioner, T.C. Memo. 2008-211; Gonce v. Commissioner, supra; Butner v. Commissioner, T.C. Memo. 2007-136.  The Pugsleys' financial difficulties and previous tax problems should have put petitioner on notice that Dr. Pugsley would not pay the tax liabilities.

We also question how petitioner could reasonably believe Dr. Pugsley would pay the tax liabilities after his long history of deceit and dishonesty.  In addition to hiding their tax returns for many years, Dr. Pugsley created an elaborate fabrication about a fictitious CPA who would file their joint tax return for 2003.  Dr. Pugsley also was not forthcoming with petitioner about losing his dental license and having his office shut down.  Rather, he continued to dress every morning in his dental scrubs pretending he was going to work rather than tell petitioner the truth.  Petitioner is a highly educated person, and she knew that Dr. Pugsley had lied to her many times in the past, including about the filing of their returns and payment of their taxes.  We find it unlikely that she would believe such a habitual liar.

We cannot accept petitioner's claim that she had no knowledge or reason to know that Dr. Pugsley would not pay the liabilities.  We find that petitioner had reason to know at the time she signed the returns that her ex-husband would not pay the joint tax liabilities.  This factor weighs against relief.

C. Economic Hardship

A third factor focuses on whether the requesting spouse would suffer economic hardship if relief were denied.  A denial of section 6015(f) relief imposes economic hardship if it prevents the requesting spouse from being able to pay his or her reasonable basic living expenses.  Butner v. Commissioner, supra; sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  Reasonable basic living expenses are based on the taxpayer's circumstances but do not include amounts needed to maintain a luxurious standard of living.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs. Relevant circumstances include the taxpayer's age, ability to earn an income, number of dependents and status as a dependent.  Sec. 301.6343-1(b)(4)(ii)(A), Proced. & Admin. Regs.  The amount of property available to satisfy the taxpayer's expenses is also considered.  Butner v. Commissioner, supra; sec. 301.6343-1(b)(4)(ii)(D), Proced. & Admin. Regs.

Petitioner receives $58,000 per year in salary, $1,500 in monthly spousal support, $484.17 in monthly marital asset payments and $240 per month for health insurance payments for her children. Petitioner testified that her monthly expenses are minimal. Petitioner has no dependents though she provides some financial support to her youngest child.  Respondent determined that, based on petitioner's spousal support and salary, petitioner had monthly

disposable income of $461 that could be applied to the tax liabilities.

We agree that petitioner may not have the means to pay the entire tax at once. We note, however, that she can meet her basic living expenses while making periodic payments against the liabilities. See Stolkin v. Commissioner, supra. We find that petitioner has the means to make monthly payments to reduce the tax liabilities and that denying her claim for relief will not impose an economic hardship on her. This factor weighs against relief.

D. Subsequent Compliance With Income Tax Laws

A fourth consideration is whether the requesting spouse made a good faith effort to comply with income tax laws in subsequent years. Respondent's Appeals Office determined that petitioner was compliant with tax laws as of 2008. Petitioner failed, however, to report spousal alimony as taxable income after her separation agreement was executed in September 2009. She also claimed a $5,000 deduction for contributing to an IRA but failed to make the requisite contribution. She alleges to have filed an amended return only after the issue was brought to her attorney's attention, though no amended return was submitted into evidence. This factors weighs against relief.

E. Economic Benefit From Items Giving Rise to Liability

A significant benefit for purposes of section 6015(f) is any benefit in excess of normal support. Sec. 1.6015-2(d), Income Tax Regs. Petitioner spent $300 a month to belong to a tony athletic

club and purchased a home for over $500,000.  Petitioner also sent her children to expensive private colleges.  The facts and circumstances presented strongly suggest that petitioner received a significant benefit from the failure to pay the tax liabilities. This factor also weighs against relief.

F. <u>Abuse by Nonrequesting Spouse</u>

Petitioner argues that Dr. Pugsley's financial irresponsibility constituted a form of financial abuse against her.  We have indicated, however, that nonphysical abuse will weigh in favor of relief only where it is severe enough to incapacitate a requesting spouse in the same manner he or she would be incapacitated by physical abuse.  <u>Nihiser v. Commissioner</u>, T.C. Memo. 2008-135.  There is no evidence that Dr. Pugsley's lies regarding their financial records incapacitated petitioner.  This factor is neutral.

G. <u>Poor Health When Signing Return or Requesting Relief</u>

Petitioner did not allege that she was in poor health when she signed the return or when she requested relief.  Respondent determined that this factor is neutral, and we have no information to find otherwise.

H. <u>Nonrequesting Spouse's Legal Obligation To Pay Liability</u>

Petitioner argues that she should be relieved of liability for the tax underpayments because the separation agreement specifically required Dr. Pugsley to pay the taxes for the years at issue.  Respondent does not question the validity of the court order.  Respondent argues and we agree, however, that the legal

obligation to pay is not a persuasive factor in favor of relief in this case.  We consider under this factor whether the requesting spouse had reason to believe upon entering into the agreement that it would not be upheld by the nonrequesting spouse.  Rev. Proc. 2003-61, sec. 4.03(2)(a)(iv), 2003-2 C.B. at 298.  Dr. Pugsley has a long history of not paying his tax liabilities.  It is difficult to put much weight on his agreement in the separation agreement to pay the taxes.  We find that petitioner had reason to believe that Dr. Pugsley might not pay the liabilities.  This factor is neutral.

III.  Conclusion

In summary, one factor weighs in favor of relief, four factors weigh against relief and three factors are neutral. After weighing the testimony and evidence in this fact-intensive and nuanced case, we conclude that it would not be inequitable to hold petitioner jointly and severally liable for the joint tax liabilities for each of the years at issue.

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

Decision will be entered for respondent.