T.C. Memo. 2013-78

UNITED STATES TAX COURT

RAQUEL L. WILLIAMSON, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16273-10.                    Filed March 13, 2013.

Mark A. Pridgeon, for petitioner.

Christina L. Cook, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, Judge:  This proceeding was commenced under section 6015

for review of respondent's determination that petitioner is not entitled to relief from

joint and several liability for 2003, 2004, 2005, 2006, and 2007 with respect

[*2] to Federal income tax returns she filed with her former spouse. The issue for consideration is whether petitioner is entitled to relief under section 6015(f).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioner resided in Minnesota when the petition was filed.

Petitioner and Tyler Williamson were married in November 2003. On July 1, 2009, petitioner filed Form 8857, Request for Innocent Spouse Relief. On her Form 8857 petitioner represented that she had been married to and living apart from Mr. Williamson since May 15, 2008. Petitioner and Mr. Williamson filed for divorce on July 24, 2009.

During 2003 through 2007 petitioner held a position as a salaried child care worker for Big Lake Public Schools. Petitioner still holds this job. Mr. Williamson operated a business, Williamson Construction, Inc., through which he offered services as an independent contractor completing framing work for residential construction and building houses on speculation for sale to customers.

[*3] Williamson Construction, Inc., is no longer in business, and Mr. Williamson filed for bankruptcy on March 13, 2008. After filing for bankruptcy Mr. Williamson began working for Knotty Pine Construction.

During the years in issue taxes were withheld on petitioner's salary; however, petitioner and Mr. Williamson did not make estimated tax payments with respect to Mr. Williamson's income. Petitioner and Mr. Williamson maintained a joint personal checking account during their marriage. Petitioner also had signatory authority and access to write checks on the checking account for Williamson Construction, Inc. On occasion, petitioner ran errands for Mr. Williamson and Williamson Construction, Inc. Petitioner also cosigned a construction loan for Williamson Construction, Inc.

Mr. Williamson's father invested approximately $50,000 into Williamson Construction, Inc., which allowed the company to purchase several lots for the purpose of building houses. Mr. Williamson's father also conducted open houses, acted as a realtor, and completed the closing on one of the properties for Williamson Construction, Inc.

Petitioner's father passed away in 2005. Petitioner's sister, Michelle Witte, was the personal representative of their father's estate. Petitioner and Ms. Witte were each given 50% of their father's estate after expenses and claims against the

[*4] estate were paid. In addition, $1,000 was given to petitioner's brother, and petitioner was given a Harley Davidson motorcycle. Ms. Witte purchased the motorcycle from petitioner to help her with expenses.

Petitioner's father's estate consisted of a plot of land, including a house, valued at approximately $500,000. Ms. Witte offered petitioner $250,000 for her share of the property, but petitioner refused the offer. Ms. Witte and her husband invested approximately $150,000 into their father's house so they could repair the property and sell it. Ms. Witte and her husband paid property taxes and devoted many hours of labor to fixing the house up and trying to find tenants to rent the property. Petitioner did not contribute to these efforts. Ms. Witte and her husband sold the house in 2011 for $230,000 and after expenses, received approximately $149,296 in cash. Ms. Witte and her husband kept the entire $149,296 as repayment for repair costs to the house; petitioner did not receive any of the proceeds.

In November and December 2008 petitioner and Mr. Williamson filed joint Federal income tax returns for tax years 2003 through 2007. Petitioner and Mr. Williamson accurately stated their income tax liability; however, they failed to pay tax for 2003 through 2007. Petitioner and Mr. Williamson owe the following amounts: $4,435 for 2003, $14,030 for 2004, $21,273 for 2005, $20,018 for 2006,

**[\*5]** and $8,624 for 2007. Petitioner filed her 2008 Federal income tax return on January 11, 2010, using the married filing separately status. Petitioner filed her 2009, 2010, and 2011 Federal income tax returns on time and paid the tax liabilities in full. Petitioner's monthly income was $4,141 in 2012. According to the Internal Revenue Service's national standards, petitioner's reasonable allowable monthly expenses are $3,731. This leaves approximately $410 each month remaining.

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3). A requesting spouse may seek relief from joint and several liability under section 6015. Sec. 6015(a). If a requesting spouse is not eligible for relief under section 6015(b) or (c), a requesting spouse may be eligible for equitable relief under section 6015(f). Sec. 6015(f)(2); Olson v. Commissioner, T.C. Memo. 2009-294, slip op. at 10-11.

Section 6015(f) permits relief from joint and several liability if it would be inequitable to hold the individual liable for any unpaid tax or deficiency. Sec. 6015(f)(1). Since there is no understatement of tax for the years in issue,

**[\*6]** petitioner is not eligible for relief under section 6015(b) or (c).  <u>See</u>

<u>Washington v. Commissioner</u>, 120 T.C. 137, 145-147 (2003).  Under section

6015(f), the Secretary may grant equitable relief to a requesting spouse on the basis

of the facts and circumstances.  <u>Id.</u>  Petitioner bears the burden of proving that she is

entitled to equitable relief under section 6015(f).  <u>See</u> Rule 142(a); <u>Porter v.</u>

<u>Commissioner</u>, 132 T.C. 203, 210 (2009).

This Court has jurisdiction to review respondent's denial of petitioner's

request for equitable relief under section 6015(f).  <u>See</u> sec. 6015(e)(1).  We apply a

de novo standard of review as well as a de novo scope of review.  <u>Porter v.</u>

<u>Commissioner</u>, 132 T.C. at 210.

Pursuant to section 6015(f), the Commissioner has issued revenue

procedures to provide guidance for determining whether a taxpayer is entitled to

relief from joint and several liability.  <u>See</u> Rev. Proc. 2003-61, 2003-2 C.B. 296,

<u>modifying and superseding</u> Rev. Proc. 2000-15, 2000-1 C.B. 447.[1]  Rev. Proc.

2003-61, <u>supra</u>, lists factors that the Commissioner should consider in deciding

---

[1]On January 6, 2012, the Commissioner released Notice 2012-8, 2012-4 I.R.B. 309, concerning a proposed revenue procedure that, if finalized, would revise the factors to be examined in determining a requesting spouse's claim for equitable relief.  Among other changes, the proposed revenue procedure expands the effect of a nonrequesting spouse's abuse and/or financial control on a requesting spouse's entitlement to equitable relief.  <u>Id.</u>

**[\*7]** whether to grant section 6015(f) relief, and the Court may consult these same factors when reviewing denial of relief. See Washington v. Commissioner, 120 T.C. at 147-152. The Court may consider these guidelines; however, we are not bound by them in evaluating the facts and circumstances with regard to whether equitable relief is appropriate. See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011).

Rev. Proc. 2003-61, supra, provides a three-step analysis to follow in evaluating a request for relief. The first step includes seven of the following threshold conditions to be met: (1) the requesting spouse filed a joint return for the taxable year for which he or she seeks relief; (2) relief is not available to the requesting spouse under section 6015(b) or (c); (3) the requesting spouse applies for relief no later than two years after the Internal Revenue Service's first collection activity;[2] (4) no assets were transferred between the spouses as part of a fraudulent scheme by the spouses; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not file or fail to file the return with fraudulent intent; and (7) absent certain enumerated

---

[2]Notice 2012-8, sec 3.01, 2012-4 I.R.B. at 311, eliminates the two-year deadline to request equitable relief and replaces it with the periods of limitations provided by sec. 6052 (relating to collections) or sec. 6511 (relating to filing a claim for credit or refund). Our analysis is unchanged by this revision given that petitioner's request was timely under any of these deadlines.

**[\*8]** exceptions, the tax liability from which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse. Rev. Proc. 2003-61, sec. 4.01, 2003-2 C.B. at 297. Respondent concedes that petitioner has met the first six threshold conditions; however, respondent contends that petitioner failed to show the tax liability was solely attributable to Mr. Williamson. Respondent contends that petitioner had underwithholding of wage income tax and self-employment tax for Williamson Construction, Inc., of approximately $1,658 in 2005, $1,718 in 2006, and $1,519 in 2007. Petitioner was involved in her husband's business and wrote checks for the business. To the extent of this underwithholding, petitioner does not meet the seventh threshold condition and we do not grant relief.

The second step is included in Rev. Proc. 2003-61, sec. 4.02, 2003-2 C.B. at 298. The second step provides three conditions that, if met, will ordinarily qualify a requesting spouse for relief under section 6015(f) with respect to an underpayment of a properly reported liability. To qualify for relief under Rev. Proc. 2003-61, sec. 4.02(1), the requesting spouse must: (1) no longer be married to, be legally separated from, or not have been a member of the same household as the other person at any time during the 12-month period ending on the date of the request for relief; (2) have had no knowledge or reason to know when signing the

[*9] returns that the other spouse would not pay the tax liability; and (3) suffer economic hardship if relief is not granted.

Although petitioner and Mr. Williamson filed for divorce on July 24, 2009, she did not provide a final copy of the divorce decree. On her Form 8857, petitioner stated that she had been married to and living apart from Mr. Williamson since May 15, 2008. Petitioner also listed a separate address from the one listed on her and Mr. Williamson's previous tax returns. However, this alone is not sufficient evidence to prove that petitioner was divorced, legally separated from, or no longer living with Mr. Williamson for a period of 12 months or longer at the time she filed for innocent spouse relief. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (the Court is not required to accept a taxpayer's unverified statements). Therefore we are unable to determine whether petitioner has met the first condition.

When signing the Federal income tax returns in 2008, petitioner had reason to know that Mr. Williamson would not pay the tax liabilities for tax years 2003 through 2007. Petitioner had full knowledge of Williamson Construction, Inc.'s dire financial situation and that Mr. Williamson had filed for bankruptcy. Petitioner and Mr. Williamson maintained a joint personal checking account throughout their marriage, and she would periodically write checks from

**[\*10]** Williamson Construction, Inc., to herself in order to pay their living expenses. Petitioner also cosigned a construction loan for the company. Petitioner was aware that Mr. Williamson had borrowed approximately $50,000 from his father so that Williamson Construction, Inc., could purchase land. Petitioner argues that she believed Mr. Williamson's father would help pay the tax liabilities; however, petitioner did not provide any evidence to show that this was a possibility. This Court has found that a requesting spouse's knowledge of a couple's financial difficulties deprives the requesting spouse of reason to believe that his or her ex-spouse will pay the tax liability. See, e.g., Pugsley v. Commissioner, T.C. Memo. 2010-255; Stolkin v. Commissioner, T.C. Memo. 2008-211; Gonce v. Commissioner, T.C. Memo. 2007-328; Butner v. Commissioner, T.C. Memo. 2007-136. Petitioner and Mr. Williamson's financial difficulties and failure to timely file their income tax returns because they "probably owed money and didn't have it to pay" should have put her on notice that Mr. Williamson would not pay the tax liabilities.

Petitioner failed to show that denying section 6015(f) relief would cause her financial hardship. A denial of section 6015(f) relief imposes an economic hardship if it prevents the requesting spouse from being able to pay reasonable basic living expenses. See Butner v. Commissioner, T.C. Memo. 2007-136.

**[\*11]** Reasonable basic living expenses are based on the taypayer's circumstances, including age, employment status, ability to earn, number of dependents, amount reasonably necessary for monthly expenses, cost of living, property exempt from levy available to pay the taxpayer's expenses, extraordinary circumstances, and any other facts the taxpayer raises. Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs. Petitioner reported monthly income of $3,401 on Form 8857 in 2009 and $4,141 on Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, on August 23, 2012. Petitioner's reasonable allowable monthly expenses are $3,731; therefore petitioner has approximately $410 remaining each month. We find that petitioner's interest in her father's estate is de minimis.

Petitioner failed to show that she cannot pay her basic living expenses while making periodic payments against the liabilities. See Pugsley v. Commissioner, T.C. Memo. 2010-255 (citing Stolkin v. Commissioner, T.C. Memo. 2008-211).

When the requesting spouse satisfies the threshold conditions but fails to satisfy the conditions in Rev. Proc. 2003-61, sec. 4.02, he or she may still be eligible for equitable relief under section 6015(f). A requesting spouse is eligible for relief if, taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable for the underpayment. Rev. Proc. 2003-61, sec.

[*12] 4.03, 2003-2 C.B. at 298-299, contains a nonexclusive list of factors that the Commissioner considers when determining whether to grant equitable relief. These factors are (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not pay the liability, or in the case of a deficiency, knowledge or reason to know of the item giving rise to the deficiency; (4) the nonrequesting spouse's legal obligation; (5) significant benefit; and (6) compliance with tax laws. Id. sec. 4.03(2)(a). No single factor is determinative, and all factors are considered and weighed appropriately. Haigh v. Commissioner, T.C. Memo. 2009-140, slip op. at 34-35.

I.     Applying the facts and circumstances factors

(1)     Marital status. Although petitioner stated on her Form 8857 that she had been living apart from Mr. Williamson since May 15, 2008, she did not provide any evidence to prove that she was actually living apart from Mr. Williamson for the requisite 12-month period or that she was legally separated or divorced from Mr. Williamson when she requested innocent spouse relief. This factor weighs against relief.

(2)     Economic hardship. Generally, economic hardship exists when collection of the tax liability will render the taxpayer unable to meet

**[\*13]** basic living expenses.  Sec. 301.6343-1(b)(4)(i), Proced. & Admin. Regs.  As discussed above, petitioner fails to make a convincing showing of economic hardship.  This factor weights against relief.

(3)  <u>Knowledge or reason to know</u>.  Petitioner had knowledge and reason to know that Mr. Williamson would not pay the tax liabilities at the time she signed the 2003-2007 Federal income tax returns.  Petitioner and Mr. Williamson had a history of late tax return filings and late bill payments; money problems were part of the reason she and Mr. Williamson ultimately sought divorce.  Petitioner was involved in the financial operations of Mr. Williamson's construction business and was aware of the company's financial woes.  At the time petitioner signed the 2003-2007 tax returns she was also aware that Mr. Williamson had recently filed for bankruptcy.  Petitioner had reason to know that Mr. Williamson would not pay the tax liabilities reasonably promptly after filing the joint returns.  See <u>Waldron v. Commissioner</u>, T.C. Memo. 2011-288, slip op. at 9-10.  This factor weighs against relief.

**[*14]** (4)    Nonrequesting spouse's legal obligation.  This factor is concerned with whether the nonrequesting spouse has a legal obligation to pay the outstanding tax liability pursuant to a divorce decree or agreement.  There is nothing in the record that suggests Mr. Williamson has a legal obligation to pay the tax liabilities, and petitioner did not provide a final copy of the divorce decree.  Therefore, this factor is not applicable and is neutral.

(5)    Significant benefit.  This factor considers whether the requesting spouse had received a significant benefit (beyond normal support) from the unpaid income tax liability.  Normal support is measured by the circumstances of the particular parties.  Porter v. Commissioner, 132 T.C. at 212.  There is nothing in the record to indicate that petitioner received a significant benefit.  This factor weighs in favor of relief.

(6)    Compliance with income tax laws.  This factor considers whether the requesting spouse has made a good-faith effort to comply with income tax laws in tax years after the year for which relief is requested.  See Rev. Proc. 2003-61, sec. 4.03(2)(a)(vi).  Although petitioner filed her 2008 Federal income tax return late, she has since

**[\*15]** made a good-faith effort to comply with income tax laws for years after 2008.  This factor weighs in favor of relief.

(7)    Other factors.  Other factors that may indicate relief is appropriate when present, but that will not weigh against granting relief when absent, are (i) whether the nonrequesting spouse abused the requesting spouse and (ii) whether the requesting spouse was in poor mental or physical health at the time she signed the tax return or when she requested relief.  Id. sec. 4.03(2)(b).

There is no evidence of abuse in this case, and on her Form 8857 petitioner checked "No" in response to questions about being a victim of spousal abuse or domestic violence and about a history of mental or physical health problems.  These two factors are neutral.

II.    Analysis

Considering all of the factors discussed above, two weigh in favor of granting relief to petitioner, three weigh against granting relief, and three are neutral.  In the light of the facts indicating that petitioner failed to prove she was divorced, legally separated, or living apart from Mr. Williamson, that she had actual knowledge of Mr. Williamson's income, and that she had reason to know

**[\*16]** that Mr. Williamson would not pay the tax liabilities, she failed to meet her burden and is not entitled relief under section 6015(f).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.