T.C. Summary Opinion 2016-2

UNITED STATES TAX COURT

ALBERT MARTIN ELBE, Petitioner, AND
ADAH M. ELBE, Intervenor <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11600-14S.                    Filed January 11, 2016.

Albert Martin Elbe, pro se.

Adah M. Elbe, pro se.

<u>William F. Castor</u>, for respondent.

SUMMARY OPINION

PUGH, <u>Judge</u>:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1] Unless otherwise indicated, section references are to the Internal Revenue

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Petitioner (Mr. Elbe) seeks review under section 6015(e)(1) of respondent's determination that he is not entitled to relief from joint and several liability for taxable year 2011 with respect to unpaid tax of $3,911[2] that was reported on the joint Federal income tax return he filed with intervenor (Mrs. Elbe), his former spouse.

The issue for decision is whether Mr. Elbe is entitled to equitable relief from joint and several liability under section 6015(f).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Mr. and Mrs. Elbe both resided in the State of Arkansas at the time the petition was filed.

Mr. and Mrs. Elbe married on June 18, 1983, and remained married in 2011. In 2011 Mr. Elbe was employed as a technician by the home security company

---

[1](...continued)
Code of 1986 as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] All monetary amounts are rounded to the nearest dollar.

ADT, and Mrs. Elbe was unemployed as she had been for at least the previous 10 years. During the first half of 2011 Mrs. Elbe moved out of the marital home, moved in with a friend, and filed for divorce. At or around the time she moved out of the marital home, Mrs. Elbe deposited a Social Security benefits payment (benefits payment) of $57,168 directly into her personal bank account to which Mr. Elbe did not have access.

Around April 16, 2012, Mr. Elbe used TurboTax to prepare and submit a joint 2011 Federal tax return (joint return). The joint return reported wages of $52,443, taxable interest of $62, a taxable refund of $1,098, and gross and taxable Social Security benefits of $57,168 and $38,459, respectively. The joint return reported total Federal income tax owed of $9,414, tax withheld of $3,550, and tax due of $5,864. All Federal income tax credited and withheld on the joint return was credited or withheld from Mr. Elbe's wages. No Federal income tax was withheld from the benefits payment, and Mr. Elbe did not include any additional payment with the joint return. Although Mr. Elbe knew that Mrs. Elbe had received the benefits payment and no tax had been withheld, he chose to file jointly because he understood that this would reduce their tax liability.

Mr. Elbe was unable to secure Mrs. Elbe's signature on the joint return on April 16, 2015, and filed the joint return on that date without her signature. The

joint return was rejected because it lacked Mrs. Elbe's signature. At a deposition on May 25, 2012, taken as part of the Elbes' divorce proceedings, Mrs. Elbe signed the joint return. Mr. Elbe then resubmitted the joint return to the Internal Revenue Service (IRS). At the May 25 deposition Mrs. Elbe stated that she did not have money to pay the full tax owed nor did she intend to pay any tax unless Mr. Elbe also paid part of the remaining liability.

At trial Mr. Elbe testified that he did not see or read Mrs. Elbe's deposition transcript before resubmitting the joint return nor had his attorney told him about Mrs. Elbe's statements although he had access to the deposition transcript soon after it was taken. Mr. Elbe also testified that he did not know how Mrs. Elbe spent the benefits payment or how much money she had left to pay the tax liability. He also acknowledged that Mrs. Elbe had not indicated to him that she intended to pay the tax liability or that she had the money to do so.

On July 30, 2012, respondent sent Mr. and Mrs. Elbe a notice of balance due for the taxable year 2011 of $6,831 (the $5,864 reported on the return but not paid plus failure to file and failure to pay penalties and interest).

Mr. and Mrs. Elbe divorced on October 24, 2012. The divorce decree, entered on December 20, 2012, stated that Mr. Elbe was to sell a 2011 Chevrolet Colorado pickup truck and that any profits were to be used toward their 2011 tax

liability. Mr. Elbe testified that he sold the truck and received a check from the dealership for $2,030 representing the proceeds from the sale after satisfaction of an outstanding loan from the dealership that was secured by the truck.[3]

On November 19, 2012, Mr. Elbe filed a Form 8857, Request for Innocent Spouse Relief. In March 2013 respondent's Cincinnati Centralized Innocent Spouse Operation (CCISO) issued a preliminary determination that Mr. Elbe was entitled to partial equitable relief of $3,911, the tax attributable to Mrs. Elbe's benefits payment, and was liable for the remaining unpaid tax of $1,953. On April 8, 2013, Mr. Elbe sent the IRS a payment for the $1,953, leaving $3,911 to be paid by Mrs. Elbe. On April 25, 2013, Mrs. Elbe appealed CCISO's preliminary determination. On April 24, 2014, the IRS Appeals Office reversed CCISO's preliminary determination and issued a final notice of determination to Mr. Elbe denying relief from joint and several liability for the remaining $3,911 of tax owed.

---

[3] The parties dispute the circumstances of the sale. That dispute is pending in Arkansas State court and is beyond our jurisdiction. We consider the truck sale relevant only in that the proceeds were to be used to pay the Elbes' 2011 tax liability, which is before us.

On May 21, 2014, Mr. Elbe filed a petition with this Court seeking review of respondent's determination. Pursuant to section 6015(e)(4) and Rule 325, Mrs. Elbe filed a timely notice of intervention to oppose Mr. Elbe's request for relief.

Discussion

Generally, married taxpayers may elect to file a joint Federal income tax return. Sec. 6013(a). After making this election, each spouse generally is jointly and severally liable for the entire tax due for that taxable year. Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000). A requesting spouse, however, may seek relief from joint and several liability under section 6015(b) or, if eligible, may allocate liability under section 6015(c). Sec. 6015(a). If relief is not available under subsection (b) or (c), a requesting spouse may seek equitable relief under subsection (f). Because this case involves failure to pay tax shown on a return, rather than a deficiency, Mr. Elbe may be eligible for relief under section 6015(f) only. See Washington v. Commissioner, 120 T.C. 137, 146-147 (2003).

Section 6015(f)(1) gives the Commissioner discretion to grant equitable relief from joint and several liability if "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion or either)".

This Court has jurisdiction to review respondent's denial of Mr. Elbe's request for equitable relief under section 6015(f).  See sec. 6015(e)(1).  In doing so, we apply a de novo standard of review, as well as a de novo scope of review.  Porter v. Commissioner, 132 T.C. 203, 210 (2009).  Mr. Elbe bears the burden of proving that he is entitled to relief under section 6015(f).  See Rule 142(a); see also Porter v. Commissioner, 132 T.C. at 210.

I.  Threshold Conditions for Granting Relief

The Commissioner has outlined procedures for determining whether a requesting spouse qualifies for equitable relief under section 6015(f) from joint and several liability.  These procedures, set forth in Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. 397, 399-400, outline seven threshold conditions that a spouse must meet to qualify for relief under section 6015(f):  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions, the tax liability from which the requesting spouse seeks

relief is attributable to an item of the nonrequesting spouse or an underpayment resulting from the nonrequesting spouse's income. Respondent does not challenge that Mr. Elbe meets the threshold conditions for relief.

## II. Elements for Streamlined Determination

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief under section 6015(f) if all of the following conditions are met: (1) the requesting spouse is divorced from the nonrequesting spouse, is legally separated from the nonrequesting spouse under State law, is a widow or widower and is not an heir to the nonrequesting spouse's estate that would have sufficient assets to pay the tax liability, or has not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date the IRS makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return. Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400-403.

Mr. Elbe fails to qualify for a streamlined determination of relief. In his request for relief Mr. Elbe did not indicate that he will suffer economic hardship if

relief is not granted. Mr. Elbe also had reason to know Mrs. Elbe would not and could not pay the tax liability, as will be discussed below.

III. Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails to qualify for relief under the guidelines for a streamlined determination, the requesting spouse still may be eligible for equitable relief if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the underpayment. See Rev. Proc. 2013-34, sec. 4.03. The following are nonexclusive factors that the Commissioner takes into account when determining whether to grant equitable relief: (1) marital status; (2) economic hardship; (3) in the case of an underpayment, knowledge or reason to know that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return; (4) legal obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or physical health. Id.

We consult these guidelines when reviewing the Commissioner's denial of relief, but we are not bound by them as our analysis and determination ultimately turn on an evaluation of all the facts and circumstances. Molinet v. Commissioner, T.C. Memo. 2014-109; Sriram v. Commissioner, T.C. Memo. 2012-91; see Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Porter v.

Commissioner, 132 T.C. at 210. In our overall facts and circumstances analysis, we focus on two of the factors.

The first factor is whether Mr. Elbe had knowledge or reason to know, as of the date the return was filed, that Mrs. Elbe would not or could not pay the income tax liability. See Rev. Proc. 2013-34, sec. 4.03(2)(c)(ii).

This factor weighs in favor of relief if Mr. Elbe meets his burden of establishing that he reasonably expected Mrs. Elbe to pay the tax liability reported on the joint return. See Torrisi v. Commissioner, T.C. Memo. 2011-235 (holding that the requesting spouse's belief that the nonrequesting spouse would pay the tax liability was reasonable when the nonrequesting spouse's business was generating substantial income, the requesting spouse did not assist the nonrequesting spouse in paying all bills, and the nonrequesting spouse asked the requesting spouse to make a check payable to the IRS for a specific amount that was less than the total amount due); see also Waldron v. Commissioner, T.C. Memo. 2011-288 (holding that the requesting spouse reasonably believed the nonrequesting spouse would pay a portion of the unpaid tax liabilities at the time the return was signed because the nonrequesting spouse had made his share of monthly payments for the initial three years on an installment agreement entered into near the time the joint return was signed).

This factor weighs against relief if it was not reasonable for Mr. Elbe to believe that Mrs. Elbe would or could pay the tax liability shown as due on the return. See Cutler v. Commissioner, T.C. Memo. 2013-119 (holding that the requesting spouse knew that the nonrequesting spouse found financial matters unpleasant and refused to deal with them and therefore the requesting spouse knew she had to prepare the returns and could not reasonably expect the nonrequesting spouse to pay tax); Yosinski v. Commissioner, T.C. Memo. 2012-195 (holding it was not reasonable to believe the nonrequesting spouse would pay tax when the nonrequesting spouse had no source of substantial income and the record did not indicate the nonrequesting spouse had any assets of substantial value in her own name); Stolkin v. Commissioner, T.C. Memo. 2008-211 (holding that the requesting spouse's knowledge of the couple's financial difficulties deprives the requesting spouse of reason to believe that the nonrequesting spouse will pay the tax liability).

Mr. Elbe argues that Mrs. Elbe should be solely liable because she received a large benefits payment and should have elected to have tax withheld from that payment. He also argues that Mrs. Elbe could pay the tax owed. But at the time he prepared the joint return he knew that no tax had been withheld from her benefits payment. He acknowledged in his testimony that he did not know how

she used the benefits payment or how much of it remained at the time he initially submitted the joint return or at the time he resubmitted the joint return. He fails to explain why he believed Mrs. Elbe would pay the tax owed on the benefits payment after no tax had been withheld. Mr. Elbe, not Mrs. Elbe, handled household finances. Mr. Elbe also knew that Mrs. Elbe had not worked in over 10 years and had no regular income to sustain her after the benefits payment was spent. We accept that Mr. Elbe did not know about Mrs. Elbe's statements in the May 25, 2012, deposition, but Mrs. Elbe also gave Mr. Elbe no basis to believe that she would or could pay the tax owed on her benefits, a fact Mr. Elbe confirmed in his testimony. On the basis of these facts, the Court concludes that it was not reasonable for Mr. Elbe to believe Mrs. Elbe would or could pay the tax liability. Therefore, this factor weighs against relief.

We also consider whether Mr. Elbe will suffer economic hardship if relief is not granted. See Rev. Proc. 2013-34, sec. 4.03(2)(b). A requesting spouse suffers economic hardship if the satisfaction of the tax liability, in whole or in part, would cause him to be unable to pay reasonable basic living expenses. Id. Mr. Elbe bears the burden of proving that he will suffer economic hardship if we do not grant him relief from joint and several liability. See Rule 142(a); Johnson v. Commissioner, T.C. Memo. 2014-240 (explaining that hardship cannot be

hypothetical, that the requesting spouse must introduce evidence to support the claim, and that regular income, in addition to savings, available to the requesting spouse supports the conclusion that there is no economic hardship). Mr. Elbe has regular income from his employment at ADT and otherwise failed to prove he will suffer economic hardship if we deny him relief. Therefore, this factor does not weigh in favor of relief but rather is neutral.

In addition to the factors above, we also consider the following facts in weighing Mr. Elbe's claim. At the time Mr. Elbe filed the joint return, he understood that he would benefit by filing jointly. Additionally, while we do not wade into the domestic dispute between Mr. and Mrs. Elbe regarding the sale of the 2011 truck, and the record does not show how the net proceeds from the truck sale were used, we cannot ignore that the divorce decree, entered after Mr. Elbe filed the joint return showing income tax owed, and after the IRS sent the notice of tax owed, required that these funds be used to pay the 2011 tax liability. This provision thus indicates that at least some of the tax liability that remained was to be shared between the parties. These facts weigh against relief.

## Conclusion

Mr. Elbe knew, or had reason to know, that Mrs. Elbe would not and could not pay the tax liability reported on their 2011 joint return. We also hold that the

facts overall also weigh against granting Mr. Elbe relief from joint and several liability under section 6015(f). We therefore sustain respondent's determination that Mr. Elbe is not entitled to relief from joint and several liability for taxable year 2011.

We have considered all arguments made and facts presented in reaching our decision and, to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.